United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMY LEE BILES,
Petitioner,

v.

JOSHUA PRUDHEL, Warden
Respondent.

Case No. 24-cv-09020-NW

**ORDER DENYING PETITION AND CERTIFICATE OF APPEALABILITY**

Re: ECF No. 1

Petitioner Jimmy Lee Biles, a state prisoner at Sierra Conservation Center in Jamestown, filed the instant *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction and sentence from Contra Costa County Superior Court. ECF No. 1. Respondent[1] filed an answer and several exhibits. *See* ECF Nos. 18, 19. Despite being granted an extension of time to do so, Biles did not file a traverse. For the reasons discussed below, the petition for writ of habeas corpus is **DENIED**.

## I. LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal district courts may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the

[1] Respondent Joshua Prudehel is named in his capacity as the warden who currently has custody of Biles. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996) (state officer who has custody over the petitioner is proper respondent for 28 U.S.C. § 2254 habeas petition); *Stanley v. California Supreme Court*, 21 F.3d 3549, 360 (9th Cir. 1994) (warden of petitioner's correctional facility is considered state officer who has custody over a state prisoner for purposes of 28 U.S.C. § 2254).

United States District Court
Northern District of California

state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (discussing 28 U.S.C. § 2254(d)(1)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable," *id.* at 409, and "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," *id.* at 411.

## II. BACKGROUND

### A. Underlying Facts[2]

Biles was convicted of murdering Albert Lea at the El Pueblo apartment complex in Pittsburg, California. ECF No. 1 at 8–10. El Pueblo had a reputation as being dangerous. *Id.* At trial, Lea's daughter, Jane Doe 1, testified that on the date of the murder, Lea was watching television with his family before leaving the apartment to walk to the store. *Id.* at 8. After Lea left, Doe 1 heard a commotion, looked out her window, and saw a white man (Biles) try to force a young girl (Jane Doe 2) into his car. *Id*. at 8. Doe 1 heard Biles yelling that he would shoot or kill someone as Lea walked across the street with his hands in his pockets. *Id.* Doe 1 then saw the car drive away, make a U-turn, and head toward the direction Lea had been walking. *Id*. at 8–9.

[2] All factual allegations within this section are from the petition for writ of habeas corpus.

United States District Court
Northern District of California

Shortly thereafter, Doe 1 and her family were notified by a neighbor that Lea had been stabbed. *Id.* at 9.

At trial, Biles testified that he acted in self-defense. ECF No. 1 at 15. Biles stated that he believed that his 12-year-old daughter, Doe 2, had been kidnapped for sex trafficking by a man named Domenic[3] DeSouza. *Id.* at 14. Biles went to the El Pueblo apartments and saw a man standing next to Doe 2; he assumed the man was working with DeSouza. *Id.* Biles testified that as he attempted to get his daughter into the car, the man grabbed Doe 2 by the shirt and backpack; the man then blocked Biles' path as he attempted to leave. *Id.* Biles jumped out of his car holding a knife, but the man approached Biles and hit him in the back of the head. *Id.* Biles stabbed the man and drove away. *Id.* at 15. On the way home, along the highway, Biles threw the knife out the window of his car, took his daughter to his aunt's house, and went home. *Id.* at 16. Biles initially lied to police about his whereabouts that evening and admitted as much during trial. *Id.* The prosecution also used evidence of Biles' prior vehicular manslaughter conviction and a prior juvenile adjudication for murder to impeach his testimony and credibility. *Id.* at 17.

Biles was convicted and sentenced for murdering Lea in 2021. ECF No. 1 at 7. Specifically, the jury convicted Biles of first-degree murder (Cal. Pen. Code § 187(a)) with a deadly weapon enhancement (Cal. Pen. Code § 12022(b)). *Id.* The trial court then found that Biles had two prior convictions, and sentenced Biles to consecutive terms of 75 years to life for murder and one year for the deadly weapon enhancement. *Id.*

On February 2, 2023, the trial prosecutor disclosed that "since the time of the trial[,] DeSouza had 'picked up several cases,' including domestic violence, unlawful intercourse with a minor, causing a minor to engage in commercial sex, and human sex trafficking of a minor by force or violence." ECF No. 1 at 7. Biles alleges that the investigation into DeSouza took place during his trial, but that investigation was never disclosed to the defense. *Id.* He argues that the information could have supported his defense and potentially led the jury to convict him of manslaughter or second-degree murder. *Id.*

---

[3] This individual's name is spelled in different ways throughout the filings. For ease of reference, the Court adopts the spelling in the Reporter's Transcript. *See* ECF No. 19 at 954.

**B. Habeas Exhibits**

Respondent submitted several exhibits for habeas review, including: the trial and appellate record, the parties' appellate briefs and petitions, the California Court of Appeal's opinion on direct appeal, the Supreme Court of California's order denying Biles' petition for review of his direct appeal, Biles' petition for writ of habeas corpus and associated filings in the California Court of Appeal, the appellate court's summary order denying habeas relief, and Biles' subsequent petition for review and denial order in the Supreme Court of California. *See* ECF No. 19.

## III. DISCUSSION

Biles seeks federal habeas corpus based on the following claims: (1) the trial court's admission of his 35-year-old juvenile murder adjudication denied him a fair trial and due process; (2) the trial court's admission of the facts underlying his 1997 carjacking and vehicular manslaughter conviction as impeachment evidence denied him a fair trial and due process rights; (3) the cumulative effect of the those errors denied him due process; and (4) the evidence that DeSouza had "picked up" several cases for domestic violence, causing a minor to engage in commercial sex, human trafficking, and human sex trafficking of a minor by force or violence, was improperly withheld from Biles during trial and, if disclosed by the prosecution earlier, could have led the jury to render a more favorable verdict. The Court discusses each claim below.

**A. Admission of Juvenile Adjudication and Prior Convictions**

Biles alleges that the admission of his juvenile murder adjudication and the facts underlying his 1997 convictions independently and cumulatively violated his right to due process. *See* ECF No. 1 at 16–17. The California Court of Appeal considered this identical claim during Biles' appeal. *See People v. Biles*, No. A163789, 2023 WL 6783423 (Cal. App. Oct. 13, 2023).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the district court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991). The Court therefore looks to the California Court of Appeal's opinion.

**1. Background**

In denying Biles' challenge to the admission of his juvenile adjudication and prior

conviction, the Court of Appeal explained the background of the claims as follows:

> During trial, the prosecutor filed a motion in limine to admit the fact of defendant's 1997 convictions of vehicular manslaughter and carjacking to impeach defendant's credibility should he testify. The prosecutor also sought admission of defendant's 1988 juvenile adjudication for murder. The court granted the motion as to the 1997 convictions, but excluded the juvenile adjudication. The court did, however, state it would consider admission of the juvenile conviction if "somehow the door [is] opened."
>
> Defendant ultimately testified and acknowledged his conviction for carjacking. He confirmed the carjacking "resulted in a car crash where somebody died," and that he was convicted of vehicular manslaughter. Defendant also testified he was placed on probation for a later conviction of possession of a firearm. The prosecutor argued defendant's testimony had opened the door to admitting evidence of his sentences by testifying about his probation term in connection with the firearm possession conviction. The prosecutor also asserted he should be allowed to offer evidence of the underlying facts of the carjacking and vehicular manslaughter convictions because defendant's testimony was "a gross misrepresentation of what happened." The court agreed and allowed evidence on both issues, noting that the way defendant phrased the carjacking and vehicular manslaughter "suggested it was a minor deviation which resulted in the death of someone else."
>
> The prosecutor subsequently asked defendant if he had been convicted of a felony carjacking. In response, defendant confirmed "it was a carjacking," and stated he took the car "at gunpoint" and "got in a high-speed chase and got in a crash, and someone died." Defendant stated he "was 25 years old" and "a lost individual," and that now he has "to live with that every day . . . of my life." The court interjected a limiting instruction following defendant's response. The court informed the jury "this information that is being asked about can only be considered for purposes of credibility and not for propensity to commit a crime." The prosecutor then clarified the facts underlying this conviction: "You drove up Highway 4 fleeing the police at 140 miles an hour, splitting lanes in that Camaro, and crashed into a man who had nothing to do with anything, and killed him, right?" Defendant disagreed with certain details but acknowledged crashing into someone and killing him.
>
> Also during defendant's testimony, he stated he had never been to El Pueblo before and "it's not my cup of tea, you know." He further stated, "I have never ever thought of ever going over there. . . . I would have never ever, ever, ever been in this place in my life." In response, the prosecutor again sought to admit defendant's juvenile adjudication. He argued the door opened to admit the juvenile adjudication "when the defendant stood up on the witness stand and talked about how dangerous El Pueblo was and what a horrible place it is, and you don't go to El Pueblo, and then he said, 'It's not my cup of tea,'" because "that is the defendant affirmatively testifying to his good character."

> The court agreed. It explained defendant "chose to engage in a diatribe in his responses which painted him as a peaceful person, as a person who had no business in El Pueblo, as a person who did not want to deal with, quote/unquote those persons, as a person who would have never ever gone to that location in his life because that was not his cup of tea." As a result of this testimony, the court noted, "We are talking about character for peacefulness or violence," and altered its prior ruling to "allow the juvenile adjudication" but not the underlying facts surrounding it. The court concluded the adjudication is more probative than prejudicial based on defendant's testimony. However, it clarified the admission of the juvenile adjudication was only on the issue of defendant's credibility, and it provided the jury with a limiting instruction stating such.

*Biles*, 2023 WL 6783423, at *2–3.

The Court of Appeal ultimately denied Biles' assertion that admission of the juvenile adjudication and 1997 convictions independently and cumulatively denied him a fair trial.

**2. Federal Habeas Claim**

The California Court of Appeal reasonably denied Biles' due process claim based on the admission of his juvenile adjudication and 1997 convictions, and the court's decision is entitled to deference under Section 2254(d).

Generally, federal habeas relief is not warranted based only on alleged errors in state law, including errors in interpreting and applying the state's evidentiary rules. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see Walden v. Shinn*, 990 F.3d 1183, 1205 (9th Cir. 2021) ("we cannot grant federal habeas relief founded on an alleged non-constitutional state evidentiary error"). But when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Andrew v. White*, 604 U.S. 86, 88 (2025) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (analyzing due process claim as to trial court's admission of prior bad acts).

"[A] federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters*, 45 F.3d at 1357 (citing *Colley v. Sumner,* 784 F.2d 984, 990 (9th Cir.), *cert. denied,* 479 U.S. 839 (1986)). To obtain relief on an evidentiary ruling, the petitioner must show that the error was of a constitutional dimension, and that it was

not harmless. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)). Accordingly, once a petitioner shows an error of constitutional dimension, he or she must also show that the error had "'a substantial and injurious effect' on the verdict." *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Because Biles challenges the independent and cumulative impacts of the admission of his adjudication and 1997 convictions, the Court analyzes the admission of each as separate subclaims below.

### ***a. Juvenile Adjudication***

Biles fails to show that the Court of Appeal was unreasonable when it found that the admission of Biles' juvenile adjudication for murder was justified and otherwise harmless.

#### **i. State Court Denial**

As to the admission of Biles' juvenile murder adjudication, the Court of Appeal noted:

> Defendant argues his statement that El Pueblo—known for violence, drugs, and prostitution—was not his "'cup of tea'" was not a comment about his peaceful character but a disinclination to visit a specific location. Accordingly, he contends his juvenile murder adjudication was not proper rebuttal evidence. Defendant further asserts even if the juvenile murder adjudication was proper rebuttal evidence, its admission constituted an abuse of discretion under Evidence Code section 352. He notes the juvenile murder was unrelated to issues on honesty, remote in time, occurred when he was a minor, and problematic because it involved the same conduct as the charged offense. We disagree.

*Biles*, 2023 WL 6783423, at *3. Regardless of whether Biles' "cup of tea" statement was in fact a misrepresentation of his background or constituted testimony regarding his peaceful character, the Court of Appeal denied the claim "because [of] [Biles'] subsequent testimony prior to the admission of the juvenile adjudication," namely, when Biles "testified that he lied to the police based on feeling 'scared' because he had 'never killed nobody.'" *Biles*, 2023 WL 6783423, at *4. The appellate court explained:

> In response to this testimony, evidence of his prior juvenile

> adjudication for murder is highly probative of defendant's "honesty or veracity." [Citation]. Accordingly, regardless of the "cup of tea" statement, admission of the juvenile adjudication was proper in light of defendant's express testimony that he had "never killed." [Citation]. As explained in *People v. Kerley* (2018) 23 Cal.App.5th 513, 553, "one party may render otherwise inadmissible evidence admissible by introducing the topic selectively such as to leave a misleading impression." To this end, we find *People v. Lankford* (1989) 210 Cal.App.3d 227 instructive. In that matter, the defendant testified he had a prior felony conviction but then stated, "'I didn't have [any] incident yet since I've been out.'" (*Id.* at p. 232, italics omitted.) However, the defendant was awaiting trial for armed robbery and assault with a deadly weapon. (*Ibid.*) The court concluded the prosecutor was entitled to ask the defendant about the pending charges in light of the defendant's testimony, explaining "it would be unfair to leave the jury with the impression he had 'been on his good behavior' since being released from prison." (*Ibid.*) Likewise, it was appropriate for the trial court here to allow the prosecutor to impeach defendant with his juvenile adjudication for murder after defendant testified he was scared because he had never killed anyone.
>
> Nor does the juvenile adjudication's remoteness justify a different conclusion. As explained in *People v. Mendoza* (2000) 78 Cal.App.4th 918, cited by defendant, "[e]ven a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior." (*Id.* at pp. 925–926.) And since the juvenile adjudication, defendant has been convicted of carjacking, vehicular manslaughter, and possession of a firearm.
>
> In addition, the trial court limited the prejudicial impact of the juvenile adjudication by excluding any mention of the underlying facts of the murder and instructing the jury to consider the conviction only as to the issue of defendant's credibility. Accordingly, we cannot conclude the trial court abused its discretion in admitting evidence of defendant's juvenile adjudication.
>
> However, even assuming the court erred in admitting evidence of the juvenile adjudication, we conclude any such error was harmless[.].

*Biles*, 2023 WL 6783423, at *4.

**ii. Analysis**

The California Court of Appeal's rejection of Biles' subclaim that the trial court's admission of his juvenile adjudication violated his right to a fair trial was not contrary to, or involve an unreasonable application of, clearly established Supreme Court precedent.

The Supreme Court has held that a state practice of allowing a jury to hear evidence of prior crimes does not violate due process when the trial court gives a limiting instruction and retains discretion to exclude the admission of particularly prejudicial evidence. *See Spencer v.*

*Texas*, 385 U.S. 554, 561 (1967). This is precisely what happened in this case, where the trial court admitted only the fact that Biles had a juvenile adjudication for murder, but not its factual background, and provided the jury with instructions limiting its consideration of the evidence. *See* ECF No. 19 at 1261–63 (discussion by trial court regarding its exclusion of evidence related to the juvenile adjudication, including the facts and type of weapon used); *id.* at 1264 (instructing jury that testimony about Biles' juvenile adjudication was "for purposes of credibility" only). The Court presumes, as it must, that the jury followed the trial court's instructions. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

In addition, the appellate court reasonably found that Biles opened the door to the admission of his juvenile adjudication when he testified that he attempted to hide evidence of his actions out of fear because he "never killed nobody." *Biles*, 2023 WL 6783423, at *4 (quotations omitted). As the evidence that Biles had, in fact, killed somebody before Lea's murder is directly relevant to impeach his testimony to the contrary, Biles cannot show that "there are *no* permissible inferences the jury may draw from the evidence," or, by extension, that its admission violated his right to due process. *Jammal*, 926 F.2d at 920; *see Cotton v. Pliler*, No. C03-0019-CRB, 2004 WL 556696, *6 (N.D. Cal. Mar. 16, 2004) (rejecting claim that admission of evidence of petitioner's five juvenile adjudications violated due process where evidence relevant and court gave limiting instructions). This subclaim fails.

***b. Facts Underlying 1997 Convictions***

Biles also argues that the admission of the facts underlying his 1997 convictions violated his right to due process.

**i. State Court Denial**

Biles' subclaim regarding admission of the underlying facts of his 1997 convictions is on stronger footing. The Court notes that the state appellate court found that the trial court's admission of this evidence was erroneous because "the underlying facts of the vehicular manslaughter conviction—e.g., speeding and switching lanes—did not illuminate defendant's credibility or dishonesty, were more prejudicial than probative, and should not have been admitted." *Biles*, 2023 WL 6783423, at *5. Nevertheless, the Court of Appeal concluded that any

error was harmless because the evidence of Biles' guilt was significant and "multiple witnesses testified that the victim did not provoke defendant prior to the incident." *Biles*, 2023 WL 6783423, at *5. Specifically, the appellate court noted that

> there was no dispute defendant killed [Lea]; the only question was whether defendant acted in self-defense. On this issue, defendant's testimony was substantially undermined without considering the evidence of his prior convictions. Defendant claimed that he felt threatened because "the same guy that was next to my daughter" was in the road in front of his car. However, the victim's daughter testified her family, including her father, were home watching a movie when she heard a "disturbance" outside and saw a man yelling at a girl. Her father had not been with defendant's daughter and was not involved in the ongoing disturbance. When her father did exit the house, the daughter testified, he walked past the commotion with his hands in his pockets and his head down, did not speak with anyone, and crossed the street.
>
> Defendant also testified he felt threatened because the victim was "sitting in front of my car," "not letting me out," and "trying to stop [him] from taking [his] little girl." He claimed he began stabbing the victim only after the victim approached and grabbed him, and defendant was hit on the back of the head. However, defendant admitted he had no visible injuries on his body. A neighbor also observed the entire incident and testified she saw defendant exit his vehicle, approach the victim, and start striking him. She stated she "d[id]n't know what angered [defendant]." The neighbor noted the victim "didn't do nothing" and was just "walking to the store like a regular day." She did not see the victim fighting defendant, and only saw defendant "swinging" his arms. She explained she recognized the victim, and said he normally went to the store "around that time." Her trial testimony was in accord with the information she provided to the police immediately after the incident.
>
> Apart from two witnesses—including a neutral third party—directly contradicting defendant's story, the evidence regarding defendant's subsequent conduct provided a substantial basis for the jury to disbelieve defendant's account. At trial, defendant admitted to (1) disposing of the murder weapon, (2) repeatedly lying to police and his family about the incident, and (3) instructing his 14-year-old son to lie to police and support his alibi. A police detective also testified defendant had deleted all call logs prior to 10:56 p.m. and all text messages prior to 9:40 p.m. on the day of the incident—i.e., after the victim was killed.
>
> Defendant failed to provide any meaningful justification for his actions. Defendant asserted he lied to the police about the then-current location of his daughter and that he had been home all night because they allegedly did not assist him in finding his daughter. He claimed to have destroyed evidence because he "knew [he] wasn't going to get a fair break." Defendant also tried to justify lying to his family about his daughter's location—despite them assisting him in locating his daughter—because he was "trusting nothing" and

> "d[id]n't want no part of nothing now." The jury reasonably could have found defendant's excuses to be illogical and undermined his credibility. Nothing in the record indicates the jury struggled to assess credibility or that the prior convictions played a meaningful role in their deliberations.
>
> Finally, the court instructed the jury it could only consider the prior conviction evidence for the limited purpose "of credibility and not for propensity to commit a crime." Any risk of prejudice arising from the prior conviction evidence "'must be deemed to have been prevented by the court's limiting instruction to the jury. We presume that jurors comprehend and accept the court's directions.'" (*Gutierrez, supra*, 28 Cal.App.5th at p. 91; *People v. Franklin* (2016) 248 Cal.App.4th 938, 953 ["We presume that the jury followed these limiting instructions, and there is nothing in this record to rebut that presumption."].)
>
> In response, defendant asserts errors that "strik[e] directly at the heart of [a] defense" are prejudicial, and credibility was a key factor in his self-defense claim. However, errors are only "prejudicial if 'the evidence against defendant is less than overwhelming.'" (*People v. Lindsey* (1988) 205 Cal.App.3d 112, 117.) And defendant concedes "the prosecution had an abundance of other impeachment [evidence] against [him]."
>
> Finally, defendant relies on *People v. Hendrix* (2022) 13 Cal.5th 933 to assert a conviction should be reversed if there is a "'reasonable chance'" the jury would have reached a different conclusion had the prior convictions been excluded. We find *Hendrix* distinguishable. In that case, the trial court provided an erroneous mistake of fact instruction to the jury. The Supreme Court noted the "misinstruction . . . effectively operated to impose an unwarranted reasonableness requirement on [the defendant's] mistake of fact claim." (*Id.* at p. 944.) The court further explained "[t]he potential effect of the error was considerable" because both sides presented extensive evidence and arguments regarding the defendant's mental state. (*Id.* at p. 945.) Here, defendant does not assert the jury was misinstructed on any element of the crime or his defense, or that the prosecution was excused from meeting its burden of proof. Rather, he contends the evidence may have swayed them to convict him of first degree murder rather than a lesser charge. Defendant's argument is mere speculation.
>
> While defendant repeatedly claimed he engaged in self-defense against "a man that was trying to take my life that had my 12-year-old daughter," nothing in the record apart from his testimony supported this argument. And, as discussed above, defendant's conduct following the murder and witness testimony seriously undermined his claims. Given the overwhelming nature of the evidence of guilt, we cannot conclude impeachment with defendant's prior convictions reasonably impacted the verdict. Likewise, for those same reasons, impeachment with defendant's prior juvenile adjudication for murder did not reasonably affect the verdict.

*Id.* at *5–6.

**ii. Analysis**

The California Court of Appeal's rejection of Biles' subclaim, that the trial court's admission of the facts underlying his 1997 convictions violated his right to due process, was not contrary to, or involve an unreasonable application of, clearly established Supreme Court precedent.

At the outset, it is undisputed that the testimony about *the existence of* the convictions was relevant to Biles' credibility upon his decision to testify, and while the appellate court found that the prejudicial effect of admitting the *underlying facts* outweighed its probative value as matter of state evidence law, the result of that balancing does not negate the permissible inferences the jury could draw from the evidence of the convictions. *See McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993), *as amended* (June 10, 1993) ("Although this evidence may have been more prejudicial than probative and, thus, inadmissible under California evidence law, this court is only concerned with its relevance."). During Biles' testimony about the 1997 convictions, the trial court immediately and repeatedly instructed the jury that it could consider the evidence related to the convictions—whether the fact of the convictions or the factual background of the convictions—only for "the limited purpose of 'credibility and not for propensity to commit a crime,'" *Biles*, 2023 WL 6783423, at *6; *see* ECF No. 19 at 1138 & 1230 (providing limiting instruction to jury prior to and during testimony regarding 1997 convictions). Thus, to the extent that no permissible inferences could be made from the evidence of the circumstances of the 1997 convictions, the Court presumes that the jury followed the trial court's instructions. *See Greer*, 483 U.S. at 766 n.8.

Moreover, even if admission of the underlying facts was erroneous, the testimony regarding the incident was not "of such quality as necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920 (citation modified). In addition to the trial court's issuance of limiting instructions, the short testimony regarding the convictions was less inflammatory than the testimony concerning the charged offense, and the evidence of Biles' lack of credibility and guilt was overwhelming: the Court notes the undisputed evidence that Biles killed Lea, lied to police and family members about his and his daughter's whereabouts, encouraged his teenaged son to lie to police about

Biles' whereabouts during the incident, and attempted to destroy or hide evidence of his guilt, as well as evidence that witnesses contradicted Biles' assertions regarding Lea's location and actions during the incident such that the Court of Appeal "[could not] conclude impeachment with defendant's prior convictions reasonably impacted the verdict." *Biles*, 2023 WL 6783423, at *6. Based on these circumstances, Biles fails to show that the Court of Appeal's finding of harmlessness was unreasonable, or that admission of the facts underlying his 1997 convictions had "'a substantial and injurious effect' on the verdict." *Brecht*, 507 U.S. at 623; *see Ilyin v. Ramirez-Palmer*, No. C02-2066-CRB, 2003 WL 21838535, at *5 (N.D. Cal. Aug. 4, 2003) (rejecting due process claim based on erroneous admission prior uncharged crimes where evidence was not of a "highly inflammatory or emotionally charged quality"); *Jones v. Virga*, No. 13-cv-05626-JD, 2015 WL 7350324, at *6 (N.D. Cal. Nov. 20, 2015) (admission of gang evidence harmless based on trial court's limiting instruction and overwhelming evidence of defendant's guilt).

***c. Cumulative Effect***

Biles also argues that the admission of his juvenile adjudication and the underlying facts of his 1997 convictions collectively prejudiced him and denied him due process. *See* ECF No. 1 at 17.

**i. State Court Denial**

The Court of Appeal rejected Biles' argument on direct appeal, noting that

> [The California] Supreme Court has rejected efforts to inflate "garden-variety evidentiary questions into constitutional ones." (*People v. Boyette* (2002) 29 Cal.4th 381, 427.) A due process violation occurs only where evidentiary error results in the complete preclusion of a defense. (*Id.* at pp. 427–428; accord, *People v. Partida, supra*, 37 Cal.4th at p. 439 ["the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*"].)
>
> Defendant next argues special caution must be applied as to evidence of past misconduct because of the heightened potential for undue prejudice. But *People v. Ewoldt* (1994) 7 Cal.4th 380, upon which defendant relies, addressed *uncharged* crimes and the "increased . . . danger that the jury might have been inclined to punish defendant for the uncharged offenses." (*Id.* at p. 405.) Such concerns are not present here, where the prior offenses at issue involve convictions.[]
>
> We have found these errors individually to be nonprejudicial and, viewing them cumulatively, we conclude defendant is not entitled to

reversal on this record.

*Biles*, 2023 WL 6783423, at *7 (footnote omitted).

**ii. Analysis**

The California Court of Appeal's rejection of Biles' argument (that the trial court's admission of his juvenile adjudication, and the facts underlying his 1997 convictions, collectively violated his right to due process) was not contrary to, nor did it otherwise involve an unreasonable application of, clearly established Supreme Court precedent. While the cumulative effect of several errors may so severely prejudice a defendant that his conviction must be overturned, relief for cumulative error is most likely to be granted when the government's case is weak. *See Thomas v. Hubbard,* 273 F.3d 1164, 1179–81 (9th Cir. 2002); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Here, the Court has not found more than one error arising out of the admission of Biles' prior criminal history and therefore has no prejudice to accumulate. In any event, as noted above, the impeachment of Biles' defense and evidence of Biles' guilt was overwhelming, and the state court reasonably found that any error was harmless.

***d. Conclusion***

"[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one," *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986), and Biles has not shown that "no 'fairminded juris[t]' could have reached the same judgment as the state court," *Shinn*, 596 U.S. at 378 (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Accordingly, Biles' due process claim based on the admission of his juvenile adjudication and the facts underlying his 1997 convictions is **DENIED**.

**B. Newly Discovered Evidence Regarding DeSouza**

Biles argues that evidence of DeSouza's arrests and charges for domestic violence and human trafficking of a minor, which was not turned over to him until after his conviction and sentencing, could have led to a reasonable chance that the jury would reach a more favorable result in his case—such as convicting him of manslaughter, or second-degree murder. ECF No. 1 at 16. The California Court of Appeal, in a summary opinion following briefing by the parties, denied this very claim by Biles. The Supreme Court of California then denied Biles' petition for

review. *See* ECF No. 19 at 1848 & 1851.

**1. Background**

As noted, during trial for the April 2019 killing, Biles testified that he stabbed Lea in self-defense after his daughter was allegedly kidnapped.

> Defendant testified his daughter had gone missing on the day of the incident. He reported her missing to the police and told them she had been taken from his home by sex traffickers. Defendant testified he had gone to El Pueblo looking for her because he did not believe the police would help. Defendant's daughter testified she had gone to El Pueblo with a boy with whom she had been texting for about a week or two. She informed police her interactions with the boy were consensual and she wanted to be there. At trial, she testified she was not being sex-trafficked, but she was scared and did not want to be at El Pueblo.

*Biles*, 2023 WL 6783423, at *1.

> Defendant provided a conflicting version of events [leading to Lea's stabbing]. Defendant stated when he arrived at El Pueblo, he saw his daughter standing outside next to a "black guy." Defendant testified that he grabbed his daughter by the shirt and shoulder, and grabbed her backpack out of her hand. The "black guy" then grabbed onto the backpack. Defendant pulled the backpack out of the other man's hand and put his daughter into the back seat of his vehicle. Defendant got in the car and started to drive away, but did not know how to exit El Pueblo, so he made a U-turn to exit the same way he entered. He testified he felt "scared to death" while driving. Defendant testified that, while he was trying to exit El Pueblo, he noticed the same "black guy" in the road by his vehicle. Defendant stated he "would have went out" if the victim had been on his side of the car and he "didn't have to worry about the window getting busted in or anything on my . . . son's side."[] Instead, defendant testified he exited the car with a knife and told the victim to keep walking. He testified the victim grabbed his shirt, and he then felt a blow to the back of his head. Defendant then began stabbing the victim until he let go of defendant, whereupon defendant got back into his vehicle and left El Pueblo.
>
> After leaving El Pueblo, defendant threw the knife out of his vehicle's window and left his daughter at his aunt's house. Defendant lied to police and his family about his actions and the location of his daughter.
>
> The neighbor found the victim lying on the ground and injured. The victim asked her to get his wife, and she did so. The victim subsequently died from multiple sharp force injuries, including a stab wound to the heart.

*Id.* at 1–2 (footnote omitted). Biles also testified that "he engaged in self-defense against 'a man that was trying to take my life [and] had my 12-year-old daughter[.]'" *Id.* at 6. The jury

apparently rejected Biles' version of events and convicted him of first-degree murder.

Biles' trial for the April 2019 killing began in August 2021, and he was sentenced shortly after. *See* ECF No. 19 at 1501. Nearly two years later, on February 2, 2023, a prosecutor sent an email alerting Biles' trial counsel that DeSouza had been arrested, starting in March 2021, for various charges, including domestic violence and human trafficking, and that DeSouza was arrested on March 28, 2022, for unlawful intercourse with a minor, spousal abuse, and sex trafficking of a minor. ECF No. 19 at 1742 & 1800. Biles contends that the evidence of DeSouza's crimes would have bolstered his claim of self-defense and supported his testimony regarding his state of mind at the time of the killing. *See, e.g.*, ECF No. 1 at 7; ECF No. 19 at 1733 ("The newly disclosed evidence of DeSouza's domestic violence and attempts at sex-trafficking is circumstantial evidence of [Biles'] fear of [Lea] (and/or provocation) because [Biles] reasonably, but mistakenly, believed [Lea] to be one of the two men who had taken his daughter to sex-traffic her").

**2. Exhaustion**

As a threshold matter, Respondent argues that, to the extent that Biles' petition may be deemed to raise a federal claim, his claim is unexhausted because "[Biles] has never cited Supreme Court authority in support of his claim, or argued that any Supreme Court holding supports his claim." ECF No. 18-1 at 26.

Under the AEDPA, a federal court cannot grant habeas corpus relief unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires that the petitioner's claims were fairly presented to the state courts and disposed of on the merits by the highest court in the state. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011). As a matter of comity, a federal court will not entertain a habeas petition unless the petitioner has exhausted the available state judicial remedies on every ground presented. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).

A federal claim is "fairly presented" to the state supreme court if it is raised by a procedural method which complies with the state appellate rules and involves a "permissible method of raising an issue in [the state supreme court]." *Farmer v. Baldwin*, 563 F.3d 1042, 1044

United States District Court
Northern District of California

(9th Cir. 2009) (federal claims fairly presented when petitioner "complied with the appellate rules" by referring to brief with attachment containing federal claims in his petition for review before Oregon Supreme Court). To exhaust the factual basis for the claim, "the petitioner must only provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'" *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (alteration in original). Moreover, state courts must be alerted to the fact that the petitioner is asserting claims under the United States Constitution in order to be given the opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *see, e.g., Hemphill v. New York*, 595 U.S. 140, 148–49 (2022) (Confrontation Clause claim was adequately presented when petitioner argued at every level of his proceedings in state court that there was a violation of his Sixth Amendment right to confrontation in violation of *Crawford v. Washington*); *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (federal due process claim based on prosecutorial misconduct was fairly presented where the text of the brief cited the Fifth and Fourteenth Amendments, federal cases concerning alleged violation of federal due process rights in the context of prosecutorial misconduct, and the "brief was clear that the prosecutorial misconduct claim was based, at least in part, on a federal right"). "'No particular form of words or phrases is essential'" for satisfying the presentation requirement, so long as the claim is "'brought to the attention of the state court with fair precision and in due time.'" *Hemphill*, 595 U.S. at 148 (quoting *Street v. New York*, 394 U.S. 576, 584 (1969)).

Upon review of Biles' prior habeas corpus petition in the California Court of Appeal and petition for review in the Supreme Court of California, the Court disagrees with Respondent's assertion that this claim is unexhausted. Biles' habeas petitions and replies in state court repeatedly cited *Brady*, arguing that the evidence was "exculpatory" and "material" to Biles' defense. *See, e.g.*, ECF No. 19 at 1725 & 1738–1740 (citing *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Atkinson*, 429 F. Supp. 880, 885 (E.D.N.C. 1977)). Although Biles primarily relied on California Penal Code section 1473 in seeking relief, by repeatedly citing to *Brady* in his briefing and describing the evidence as *Brady* material, Biles sufficiently provided the state court with notice that his claim was at least partially based on a federal right. *See Dye v.*

*Hofbauer*, 546 U.S. at 4. Alternatively, the Court notes that a federal court may deny a habeas petition on the merits even if a claim is unexhausted where, as here, it is clear that a petitioner does not raise a colorable federal claim. *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

**3. California Penal Code § 1473**

To the extent that Biles raises his claim of newly discovered evidence under California Penal Code § 1473, the Court agrees with Respondent's assertion that the claim is not cognizable on federal habeas review. "[O]nly noncompliance with federal law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts[,]" and "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). Where a petitioner's claim is based on an allegedly erroneous application of a state statute, the petitioner is not entitled to relief unless that error "also entailed the infringement of [a] federal right." *Id.*; *see also Estelle*, 502 U.S. at 67. Biles makes no such assertion here, nor does the Court find any basis for him to do so. The California Penal Code § 1473 portion of Biles' claim is therefore **DENIED** for failure to state a cognizable federal claim.

**4. *Brady* Claim**

To the extent that Biles is attempting to raise a claim under *Brady*, he fails to show that he is entitled to federal habeas relief.

***a. Legal Standard***

As noted, this claim was summarily denied by the California Court of Appeal. Summary denials are presumed to be adjudications on the merits though "the presumption may be overcome when there is reason to think some other explanation for the state court's decision." *Richter*, 562 U.S. at 99–100. When confronted with a state court's summary denial of a claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

In conducting habeas review, a federal court must determine: "(1) 'what arguments or

theories supported or could have supported the state court's decision,' and (2) 'whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" *Cook v. Kernan*, 948 F.3d 952, 966 (9th Cir. 2020) (quoting *Richter*, 562 U.S. at 102). Under § 2254(d)(1), a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Williams*, 529 U.S. at 402–04 & 409.

***b. Analysis***

Upon the Court's independent review of the petition, briefing, and state court record, the Court concludes that the state courts' adjudication of this claim did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. For a *Brady* claim to succeed, a petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material or, put differently, that prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused. *See United States v. Agurs*, 427 U.S. 97, 107 (1976).

Here, the state courts could reasonably deny Biles' claim by concluding that even if the evidence of DeSouza's pre-trial arrests was favorable and suppressed by the prosecution, Biles did not show the evidence at issue was material. *See Cone*, 556 U.S. at 469–70. During trial, Biles and other witnesses testified about Biles' alleged belief that Doe 2 had been kidnapped and may

have been trafficked by DeSouza; they also testified about Biles' state of mind during the incident, including his alleged fear for his and his family's safety shortly before the April 2019 killing. *See, e.g.*, ECF No. 19 at 1167 (testimony by witness who discussed Doe 2's alleged kidnapping and sex trafficking with Biles); ECF No. 19 at 1212 (Biles direct examination).

Biles argues that the evidence at issue could support his defense and potentially result in a conviction for something other than first degree murder. ECF No. 1 at 16. But critically, DeSouza was not present at the scene of the murder. Moreover, any evidence of DeSouza's alleged human trafficking activities would only be relevant to Biles' state of mind if he was aware of the criminal activity prior to the April 2019 killing, and Biles does not explain why evidence of DeSouza's criminal conduct in 2021 and beyond is relevant, let alone exculpatory. Even if the evidence was relevant, the state courts could reasonably find that Biles failed to show that he was prejudiced by the prosecution's failure to disclose it. The Court notes that Doe 2 denied being sex trafficked by DeSouza during trial, DeSouza was investigated but not called as a witness by either party, and there was no evidence—beyond Biles' testimony that he saw Lea next to Doe 2 on the date of the incident—that Lea had any affiliation with DeSouza. *See* ECF No. 19 at 705–31. Given the arrests' marginal relevance to the events that occurred in April 2019, as well as the overwhelming evidence in this matter, the state courts could reasonably find that Biles did not demonstrate prejudice from the Government's failure to provide Biles with the evidence of DeSouza's 2021 arrests before trial. *See Benson v. Chappell*, 958 F.31, 801, 837–39 (9th Cir. May 1, 2020) (no *Brady* violation where the failure to disclose certain evidence was not prejudicial; there was significant evidence of both guilt and aggravation and undisclosed evidence was either cumulative, of marginal relevance, or diminished the defense's credibility); *Bradford v. Davis*, 923 F.3d 599, 614 (9th Cir. 2019) (finding that undisclosed notes from witness interviews conducted by police contained cumulative information of evidence that was already introduced at trial, such that there was no reasonable probability that the trial result would have differed had the interview notes been disclosed); *Clark*, 936 F.3d 944, 980 (9th Cir. 2019) (in light of "overwhelming" evidence against defendant, the potential impact of the evidence not disclosed was "inconsequential").

United States District Court
Northern District of California

### *c. Conclusion*

Biles has not shown that the state law portion of his claim is cognizable on federal habeas review, and, as to his *Brady* claim, has not shown that "no 'fairminded juris[t]' could have reached the same judgment as the state court," *Shinn*, 596 U.S. at 378 (alteration in original) (quoting *Richter*, 562 U.S. at 102). Accordingly, Biles' claim regarding the newly discovered evidence in this matter is **DENIED**.

## IV. CONCLUSION

The state court's adjudication of Biles' claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The petition for writ of habeas corpus is therefore **DENIED**.

In addition, a certificate of appealability will not issue. Biles has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Biles may seek a certificate of appealability from the United States Court of Appeals for the Ninth Circuit.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: August 4, 2026

Noël Wise
United States District Judge